

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MERCURY VAPOR PROCESSING TECHNOLOGIES, INC. d/b/a River Shannon Recycling Technologies; )))) | |
| Plaintiff, ) ) | No. 07 C 6066 |
| v. ) ) | Judge Ruben Castillo |
| THE VILLAGE OF RIVERDALE, an Illinois municipal corporation, et al., ))) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Mercury Vapor Processing Technologies, Inc., d/b/a River Shannon Recycling Technologies ("River Shannon") brought this action under 42 U.S.C. § 1983 against the Village of Riverdale, Illinois, ("Riverdale") and various Riverdale officials and employees ("Riverdale Defendants"), alleging that they unlawfully conspired to deprive River Shannon of its property and drive the company out of business. (R. 43, Am. Compl. ¶¶ 1-28.) Riverdale has filed a Counterclaim against River Shannon for allegedly operating an illegal solid waste storage and disposal facility. (R. 48, Am. Counterclaim ¶ 1.) Presently before the Court is River Shannon's motion to disqualify one of Riverdale's attorneys, Michael Blazer ("Blazer"), because he may be a witness at trial. (R. 37, Mot. to Disqualify.) For the following reasons, the motion is denied without prejudice.

## RELEVANT FACTS

River Shannon is an Illinois corporation which "recycles non-regulated e-waste and

1

universal waste, including such materials as florescent light tubes and mercury vapor bulbs by use of mobile processing equipment." (R. 43, Am. Compl. ¶ 4.) Since 2005, River Shannon has leased a property located at 13605 South Halsted Street in Riverdale, Illinois, where it "stores its materials, equipment, and vehicles." (*Id.* ¶ 10.) The property is located in a heavily industrial area near a rail yard, and most of the surrounding property is abandoned or unoccupied. (*Id.* ¶ 11.) Riverdale has slated this area for redevelopment as part of its Pacesetter Neighborhood Project and has obtained title to surrounding properties, including property immediately adjacent to River Shannon's facility. (*Id.* ¶ 14.) River Shannon alleges that the Riverdale Defendants "harbor an animosity" toward River Shannon and its management, in part due to River Shannon's presence in the South Halsted location, which is "impinging on the ability of Riverdale to redevelop the area." (*Id.* ¶ 15.)

Since moving to the property in 2005, River Shannon has been attempting to obtain a business license to operate a recycling plant, but has been unable to do so. (*Id.* ¶¶ 17-36.) The complaint is lengthy and detailed, but in essence River Shannon alleges that the Riverdale Defendants engaged in a "campaign of harassment" against River Shannon which included: "formulating and acting on Riverdale's official policy to selectively fail to issue River Shannon a business license; treating River Shannon differently than similarly situated businesses seeking a business license; conducting or participating in unlawful warrantless searches and seizures and the Business Premises; blockading and forbidding entrance to the Business Premises; interfering with River Shannon's right to have its employees present on its Business Premises resulting in substantial vandalism, burglaries and break-ins at its Business Premises; and refusing to provide police and fire responses to River Shannon's calls regarding vandalism, auto theft, and other

illegal acts complained of herein." (*Id.* ¶ 9.)

The Amended Complaint provides significant detail regarding each of these allegations, but the Court repeats here only those allegations that pertain to Blazer. River Shannon alleges that sometime in June 2007, its Chief Operating Officer, Laurence C. Kelly ("Kelly"), attempted to speak with Riverdale's Village Clerk, Joyce Forbes ("Forbes"), about its pending business license application. (R. 43, Am. Compl. ¶ 36.) Forbes allegedly refused to speak with Kelly, and instead "advised Kelly to contact Michael Blazer, the Village's special environmental counsel." (*Id.*) Kelly met with Blazer on or about July 11, 2007. (*Id.* ¶ 37.) At that meeting, Blazer allegedly "promised to assist River Shannon in obtaining its 2007 business license." (*Id.* ¶ 38.) In a subsequent phone conversation, Blazer requested certain documentation from Kelly, including a list of River Shannon's current customers, purportedly to help River Shannon obtain its business license. (*Id.* ¶¶ 40-41.) Kelly supplied this information. (*Id.* ¶ 41.)

On September 6, 2007, Kelly met with Blazer again. (*Id.* ¶ 47.) According to the Complaint, this time Blazer was not so congenial. (*See id.* ¶¶ 48-50.) Blazer allegedly told Kelly (falsely, according to the complaint) that River Shannon was under investigation by state and federal agencies for environmental regulatory violations. (*Id.* ¶ 48.) At the meeting, Blazer also allegedly handed Kelly a cease-and-desist order, signed by Blazer, which ordered River Shannon to cease its operations at the Riverdale facility. (*Id.* ¶ 49, Ex. D.) The same day as the meeting with Blazer, a cease-and-desist order was also posted to the front gate at River Shannon's property. (*Id.* ¶ 51.)

Shortly after this meeting, on September 11, 2007, the Riverdale Defendants allegedly conducted their first of five "raids" on River Shannon's property, in which they allegedly

3

searched the property and took photographs without a valid search warrant. (*Id.* ¶ 64.) On October 4, 2007, a second "raid" allegedly occurred, during which one of the Riverdale Defendants gave a River Shannon employee the same cease-and-desist order that Blazer previously gave to Kelly. (*Id.* ¶ 67.) On October 10, 2007, River Shannon received a letter from Blazer denying River Shannon's 2007 business license application and returning its application fee. (*Id.* ¶ 71 & Ex. E.) On October 18, 2007, River Shannon was preparing to move its equipment and materials from the South Halsted location, when Roy McKinney ("McKinney"), Riverdale's Director of Building and Zoning, and other Riverdale Defendants showed up. (*Id.* ¶ 72.) McKinney allegedly told Kelly that River Shannon would not be permitted to leave the property unless Kelly agreed to call Blazer before 3:30 p.m. that day to advise him where River Shannon was moving "and to address additional issues Blazer had." (*Id.* ¶ 73.) Kelly did not call Blazer. (*Id.* ¶ 75.) The following day, October 19, 2007, the Riverdale Defendants allegedly conducted another unauthorized "raid" on River Shannon's property, in which they "seized samples and equipment, searched and photographed the Business Premises, as well as file drawers, desk drawers and equipment storage areas without judicial process or lawful authority." (*Id.* ¶ 74.)

Within days thereafter, Riverdale issued three separate Notices of Intent to Sue ("Notices") River Shannon for alleged violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972 *et seq.* (R. 48-7, Am. Counterclaim, Ex. F, Notices.) The Notices were signed by Lance E. Franke, an attorney from Blazer's law firm, Jeep & Blazer. (*Id.*) Copies of the Notices were sent to each of River Shannon's customers; according to River Shannon, Blazer had obtained the information about River Shannon's customers under the false

pretense of helping River Shannon obtain its business license. (*See* R. 43, Am. Compl. ¶¶ 40-41, 87-91.)

## PROCEDURAL HISTORY

On October 26, 2007, River Shannon filed this suit alleging violation of its civil rights. (R. 1, Compl.) River Shannon has since filed an Amended Complaint adding claims stemming from alleged wrongful acts committed by the Riverdale Defendants following the filing of the original complaint. (R. 43, Am. Compl. ¶¶ 110-121.) Riverdale denies the allegations in the Amended Complaint, and has also filed an Amended Counterclaim[1] accusing River Shannon, along with numerous entities alleged to be conducting business with River Shannon, of operating an unauthorized solid waste treatment, storage, and disposal facility at the South Halsted location. (R. 52, Answer to Am. Compl.; R. 48, Am. Counterclaim ¶¶ 1-16.)

It is apparent from the Amended Counterclaim that Blazer and others were present at River Shannon's property on October 19, 2007, although Riverdale's account is that it was conducting an environmental "inspection" of the property, and not a "raid" as River Shannon suggests. (*See* R. 43, Am. Compl. ¶ 74; R. 48-6, Am. Counterclaim, Ex. E, Inspection Report.) According to Riverdale, River Shannon has been improperly receiving and storing large quantities of solid waste containing mercury, acid, and other hazardous substances which pose a threat to the health and safety of Riverdale residents. (R. 48, Am. Counterclaim ¶¶ 19-28.) The Amended Counterclaim raises claims under RCRA, various Riverdale ordinances, and the Illinois common law public nuisance doctrine. (*Id.*, Counts I-XIII.)

---

[1] Riverdale originally filed a Counterclaim on December 11, 2007. (R. 18, Counterclaim.) On January 31, 2008, Riverdale filed an Amended Counterclaim adding additional claims. (R. 48, Am. Counterclaim.)

5

Riverdale's Amended Counterclaim was prepared and filed by Blazer's law firm, Jeep & Blazer, although it was signed by another attorney in the firm. (*Id.* at 26.) Blazer has designated himself as lead counsel with respect to the Amended Counterclaim, as well as the attorney who will act as trial counsel if the claims raised in the Amended Counterclaim proceed to trial. (R. 14, Blazer Appearance.) Two other attorneys from Jeep & Blazer have also filed appearances in the case. (R. 15, Franke Appearance; R. 16, Yu Appearance.)

Presently before the Court is River Shannon's motion to disqualify Blazer from serving as counsel in the case. (R. 37, Mot. to Disqualify.) River Shannon argues that Blazer should be disqualified as counsel pursuant to the "advocate-witness" rule because he was not only a fact witness to some of the underlying events, but actually "orchestrated" the alleged raids and other actions challenged by River Shannon in its Amended Complaint. (R. 37, Mot. to Disqualify at 1-2.)

## LEGAL STANDARDS

Disqualification of an attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). This is because disqualification of counsel deprives a party of the representation of their choosing. *Id.*; *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). A motion to disqualify counsel may sometimes be legitimate and necessary, but "such motions should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722.

## ANALYSIS

Under the advocate-witness rule, an attorney is barred from acting as both an advocate and a witness in a single proceeding. *U.S. v. Marshall*, 75 F.3d 1097, 1106 (7th Cir. 1996). This rule has several purposes: (1) it eliminates the possibility that the attorney will not be a fully objective witness; (2) it reduces the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments; and (3) it avoids the appearance of impropriety. *U.S. v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983); *Johnstone v. Wabick*, 220 F. Supp. 2d 899, 901 (N.D. Ill. 2002).

In the Northern District of Illinois, Local Rule 83.53.7 governs the issue of lawyer-witnesses, providing:

> (a) A lawyer shall not act as an advocate in a trial or evidentiary proceeding if the lawyer knows or reasonably should know that the lawyer may be called as a witness therein on behalf of the client, except that the lawyer may do so and may testify:
>
> (1) if the testimony will relate to an uncontested matter;
>
> (2) if the testimony will relate to a matter of formality and the lawyer reasonably believes that no substantial evidence will be offered in opposition to the testimony;
>
> (3) if the testimony will relate to the nature and value of legal services rendered in the case by the lawyer or the firm to the client; or
>
> (4) as to any other matter, if refusal to act as an advocate would work a substantial hardship on the client.
>
> (b) If a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of a client, the lawyer may act as an advocate in a trial or evidentiary proceeding unless the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client.

7

Local Rule 83.53.7. This rule does not render an attorney incompetent to testify, but merely vests the Court with discretion to determine whether counsel may appear as a witness without withdrawing from the case. *Karazonos v. Madison Two Assoc.*, 147 F.3d 624, 629 (7th Cir. 1998); *Morris*, 714 F.2d at 671. Where an attorney has improperly appeared as both an advocate and a witness in a case, a new trial may be required. *Marshall*, 75 F.3d at 1106.

As recounted above, it is apparent from the pleadings that Blazer played a significant role in the events leading up to this litigation, including: the meetings and phone calls with Kelly; the issuance of the cease-and-desist order; the denial of River Shannon's 2007 business license application; the various alleged "raids" conducted on the South Halsted facility, including the October 19, 2007, inspection; and the issuance of the Notices of Intent To Sue. Blazer may be a fact witness to these events, which could conflict with his role as counsel for Riverdale.[2]

Riverdale argues that Blazer's representation poses no potential problem because he is only representing Riverdale in connection with its Amended Counterclaim, and not in connection with River Shannon's Section 1983 action. (R. 46, Resp. to Mot. to Disqualify at 5-6.) This is a distinction without a difference, however, because River Shannon's Amended Complaint and Riverdale's Amended Counterclaim are completely interwoven. While Riverdale claims that

---

[2] For the same reasons, Blazer could be subject to a deposition. To take an opposing counsel's deposition, a party must show that the information sought is relevant; no other means for obtaining the relevant information exists; the need for the information outweighs the inherent risks of deposing opposing counsel; and the information sought is not privileged. *Johnstone*, 220 F. Supp. 2d at 901. While this is a "heavy burden," *Gen. Dynamics Corp. Savings & Stock Invest. Plan v. Gen. Dynamics Corp.*, No. 06-698, 2007 WL 3145058, at *3 (N.D. Ill. Oct. 25, 2007), it is not insurmountable. For instance, if River Shannon can show that Blazer was the only other party to certain conversations with Kelly, or that Blazer in fact "orchestrated" one or more alleged raids on River Shannon's property, Blazer may be required to submit to a deposition.

8

River Shannon is committing ordinance violations and creating a public nuisance with its unlawful operation of a solid waste facility, River Shannon claims that the Riverdale Defendants have engaged in a "campaign of harassment" designed to drive them out of business, including making trumped-up charges of environmental violations. The same issues are at the heart of both cases.

Despite this potential for conflict, the Court finds it premature to take the drastic measure of disqualifying Blazer entirely at this stage of the litigation. First, the Local Rule prohibits a lawyer-witness from acting as an advocate in a trial or evidentiary proceeding, but it does not prohibit him from handling other phases of the litigation. Local Rule 83.53.7(c) ("[N]othing in this rule shall be deemed to prohibit a lawyer barred from acting as an advocate in a trial or evidentiary proceedings from handling other phases of the litigation."); *In re Thomas Cons. Indus., Inc.*, 289 B.R. 647, 653-54 (N.D. Ill. 2003) (possibility that attorney would be called as witness in evidentiary proceeding was not proper ground for disqualifying him from participating in all phases of the litigation). Thus, even if Blazer later becomes a witness at trial or in an evidentiary proceeding, he is not prohibited from conducting discovery, drafting motions, or serving in some other capacity at this stage of the litigation. *See Khoury v. Cook Assoc., Inc.*, No. 94-3121, 1997 WL 567796, at *3 (N.D. Ill. Sept. 4, 1997) (lawyer-witness not precluded from researching and drafting motion to dismiss); *Drago v. Davis*, No. 96-2398, 1996 WL 479696, at *5 (N.D. Ill. Aug. 20, 1996) (lawyer-witness not precluded from conducting deposition).

Second, this case is still in the preliminary stages. Disqualification of a lawyer-witness is "very circumstance specific," and often these circumstances are not fully revealed until the case

9

progresses. *In re DeVlieg, Inc.*, 174 B.R. 497, 504 n. 8 (N.D. Ill. 1994). This case is only at the pleading stage, and no discovery has yet occurred. (R. 52, Defs.' Answer to Am. Compl.) It is entirely conjectural what claims, if any, will proceed to trial, let alone whether Blazer will be called as a witness. *See Heim v. Signcraft Screenprint, Inc.*, No. 01-50014, 2001 WL 1018228, at *2 (N.D. Ill. July 24, 2001) (disqualification not warranted at pleading stage because "it is not clear at this point whether [counsel] will in fact be needed as a witness"); *see also Coolsavings.com, Inc. v. E-Centives, Inc.*, No. 98-4924, 2000 WL 1262929, at *5 (N.D. Ill. Sept. 1, 2000) ("[t]he primary problem with attorneys as witnesses comes at the time of jury trial").

Further, if Blazer is called to testify, whether he should be allowed to continue as counsel in the case depends upon who calls him as a witness. Local Rule 83.53.7(a), (b). If Blazer is called by his own client, the Court must balance Riverdale's interest in retaining the lawyer of its choice with the likely prejudice River Shannon would suffer if Blazer were allowed to serve in dual roles. Local Rule 83.53.7, Committee Comment. "Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." *Id.* None of this information is known at this stage.

If Blazer is called as a witness by River Shannon, the question becomes whether his testimony "is or may be prejudicial to the client." Local Rule 83.53.7(b). Because the substance of Blazer's testimony is presently unknown, the Court cannot make this determination now. Additionally, Blazer's disqualification would be warranted only if River Shannon can demonstrate that his testimony cannot be provided by another witness. *Rudzinski v. Met. Life Ins. Co.*, No. 05-0474, 2007 WL 3171338, at *5 (N.D. Ill. Oct. 25, 2007). At present, it is not known

10

whether other witnesses would be able to testify to the same matters as Blazer. For all of these reasons, the request for disqualification is premature. *See Tokh v. Water Tower Court Homeowners Assoc.*, No. 06-0489, 2006 WL 1648442, at *4 (N.D. Ill. June 12, 2006) (disqualification inappropriate at pleading stage because subject of lawyer-witness's testimony, and whether other witnesses could testify about the same matters, was unknown).

Although the Court does not find disqualification warranted at this stage, Blazer's presence as counsel in this case is potentially troubling, given his significant involvement in the events underlying this litigation, including certain discussions that occurred between Blazer and Kelly to which there may have been no other witnesses. (*See* R. 43, Am. Compl. ¶.) Even if Blazer does not testify as a witness at trial, his cross-examination of Kelly regarding their conversations could create an "unsworn witness" problem, whereby the trier of fact might confuse Blazer's summation and argument as his own version of their conversations, without Blazer having been sworn as a witness and subjected to cross-examination. *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97-5696, 2004 WL 783356, at *7 (N.D. Ill. Jan. 28, 2004). Such a scenario would unfairly prejudice River Shannon.

If Blazer's testimony becomes necessary at trial regarding disputed matters, it is difficult to envision how he could feasibly continue as trial counsel on behalf of Riverdale. Riverdale must consider whether it wishes to retain Blazer as counsel at the risk of having him disqualified at some later stage of the litigation. If the Court is required to decide the issue of disqualification, one of the relevant considerations will be whether "one or both parties could reasonably foresee that the lawyer would probably be a witness." Local Rule 83.53.7, Committee Comment. Riverdale should consider itself on notice that Blazer could be called as a witness if

11

this case proceeds to trial.[3] In other words, if disqualification becomes necessary at some later stage, Riverdale will not be heard to argue that Blazer must be permitted to continue as trial counsel because Riverdale would be unfairly prejudiced by having to find new counsel.

Ordinarily, another member of the lawyer-witness's law firm may continue acting as an advocate during trial even if the lawyer-witness is disqualified. Local Rule 83.53.7(c); *Hyatte v. Winnebago County Recorder*, No. 99-50286, 2003 WL 297521 (N.D. Ill. Feb. 12, 2003). The issue is complicated here, however, because other members of Jeep & Blazer were also involved in the events underlying this litigation. (*See* R. 48-7, Am. Counterclaim, Ex. F, Notices.) Further, if it turns out that Blazer has testimony to offer that substantially conflicts with the testimony of the Riverdale Defendants, it would be improper for any member of Blazer's law firm to continue its representation of Riverdale. Local Rule 83.53.7(c), Committee Comment.

To avoid potential difficulties as this case proceeds, and pursuant to this Court's inherent authority to manage its own docket in a manner that conserves scarce judicial resources and promotes the efficient disposition of cases, *see Champ v. Siegel Trading Co.*, 55 F.3d 269, 277 (7th Cir. 1995), the Court finds it necessary to require Riverdale to obtain co-counsel from another law firm to assist Jeep & Blazer with the litigation of Riverdale's Amended Counterclaim. Co-counsel should be fully prepared to step into the role of lead trial counsel in the event that Blazer and his law firm are disqualified at some later stage of this litigation.

---

[3] Blazer also has his own responsibility to ensure that his representation of Riverdale comports with his ethical obligations. Local Rule 83.51.7 (conflict of interest questions are "primarily the responsibility of the lawyer undertaking the representation"); *see also* Ill. R. Prof. Conduct 3.7(a) ("[A] lawyer shall not accept or continue employment in contemplated litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness. . . ."). The Court trusts that Blazer will fully consider his ethical obligations in light of this opinion.

## CONCLUSION

For the reasons stated above, River Shannon's motion to disqualify attorney Michael Blazer (R. 37) is denied without prejudice. River Shannon may renew its motion to disqualify if and when it becomes apparent that Blazer will be a witness at trial or an evidentiary hearing, and if there is a good-faith basis for arguing that disqualification is necessary under Local Rule 83.53.7. Further, within twenty-one (21) days of the date of this opinion, Riverdale must retain an attorney from a law firm other than Jeep & Blazer to serve as co-counsel in connection with the Amended Counterclaim.

The parties shall appear for a status on **April 1, 2008 at 9:00 a.m.**, at which time the Court will set briefing on the pending dispositive motions.

Enter:

Judge Ruben Castillo

Dated: March 4, 2008